**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NANCY BOHNAK and JANET LEA SMITH,
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MARSH & MCLENNAN COMPANIES, INC. et al.,

Defendants.

Case No. 21-CV-6096-AKH

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

COOLEY LLP

Travis LeBlanc (*pro hac vice*)
Tiana Demas
Nicholas Flath
Valeria Pelet del Toro

55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000

1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 728-7018

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARDS .......................................................................................................... 5

I.    DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER
      JURISDICTION ......................................................................................................... 5

II.   DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ............. 6

ARGUMENT ....................................................................................................................... 6

I.    PLAINTIFFS LACK STANDING ................................................................................ 6

      A.    The Unauthorized Access Did Not Result from a Targeted Attack ...................... 7

      B.    The Affected Dataset Has Not Been Misused ...................................................... 9

      C.    Exposure of Social Security Numbers Does Not by Itself Confer Standing ....... 12

II.   PLAINTIFFS FAIL TO STATE CLAIMS FOR RELIEF ............................................ 13

      A.    Plaintiffs Fail to Plausibly Allege Negligence or Negligence *Per Se* ................. 13

            1.    Plaintiffs Fail to Allege Damages ............................................................. 14

            2.    Plaintiffs Fail to Allege Breach or Causation ......................................... 17

            3.    Plaintiffs' Negligence *Per Se* Claim Fails ............................................. 18

      B.    Plaintiffs Fail to Plead Breach of Implied Contract ............................................ 19

      C.    Plaintiffs Fail to Plead Breach of Confidence ..................................................... 21

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of Allstate Ins. Co. (Stolarz—N.J. Mfrs. Ins. Co.)*,
   81 N.Y.2d 219 (1993) ...........................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................6, 17

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).................................................................................3, 18

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) .............................................................................8, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................6, 16, 18

*Bildstein v. Mastercard Int'l Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004) ....................................................................6

*In re Brinker Data Incident Litig.*,
   No. 18-CV-686, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020)..............................14, 18, 19, 22

*Casey v. Bank of Am., N.A.*,
   No. 13-CV-60983, 2014 WL 12580515 (S.D. Fla. Mar. 12, 2014)........................20

*Chambliss v. Carefirst, Inc.*,
   189 F. Supp. 3d 564 (D. Md. 2016).....................................................................10

*Clapper v. Amnesty Int'l*,
   568 U.S. 398 (2013)...............................................................................5, 6, 9, 11

*Clemens v. ExecuPharm, Inc.*,
   No. 20-CV-3383, 2021 WL 735728 (E.D. Pa. Feb. 25, 2021), *appeal
   docketed*, No. 21-1506 (3d Cir. Mar. 18, 2021).....................................................8

*Corcoran v. N.Y. Power Auth.*,
   935 F. Supp. 376 (S.D.N.Y. 1996) .........................................................................6

*Doe v. Chao*,
   540 U.S. 614 (2004)..............................................................................................14

*Fero v. Excellus Health Plan, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) .................................................................11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Fink v. Time Warner Cable*,
   810 F. Supp. 2d 633 (S.D.N.Y. 2011)...................................................................................19

*Galaria v. Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) .........................................................................................9

*Gardiner v. Walmart Inc.*,
   No. 20-CV-4618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)...........................................14

*In re GE/CBPS Data Breach Litig.*,
   No. 20-CV-2903, 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021)......................................11, 18

*Germano v. Cornell Univ.*,
   No. 03-CV-9766 (DAB), 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)..............................20

*Graham v. Universal Health Serv.*,
   No. 20-CV-5375, 2021 WL 1962865 (E.D. Pa. May 17, 2021)............................................8

*Hammond v. Bank of N.Y. Mellon Corp.*,
   No. 08-CV-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...............................10, 15, 20

*Harley v. Druzba*,
   169 A.D.2d 1001 (3d Dep't 1991) .......................................................................................22

*HC2, Inc. v. Delaney*,
   510 F. Supp. 3d 86 (S.D.N.Y. 2020).......................................................................21, 22, 23

*Hinton v. Heartland Payment Sys., Inc.*,
   No. 09-CV-594, 2009 WL 704139 (D.N.J. Mar. 16, 2009)...................................................10

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
   304 F. Supp. 3d 392 (S.D.N.Y. 2018)..................................................................................13

*I.G. Second Generation Partners, L.P. v. Duane Reade*,
   17 A.D.3d 206 (1st Dep't 2005) ......................................................................................... 19

*Kamholtz v. Yates Cty.*,
   350 F. App'x 589 (2d Cir. 2009) ...........................................................................................3

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*,
   No. 99-CV-0275, 2004 WL 1811427 (S.D.N.Y. Aug. 12, 2004)..........................................18

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021) ................................................................................13

*Koehler v. MTA*,
   214 F. Supp. 3d 171 (E.D.N.Y. 2016) ..................................................................18

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) .........................................................................20

*Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*,
   234 A.D.2d 187 (1st Dep't 1996) .........................................................................20

*Longenecker-Wells v. Benecard Servs., Inc.*,
   658 F. App'x 659 (3d Cir. 2016) ..........................................................................19

*Lopez v. United States*,
   No. 15-CV-9695, 2016 WL 7156773 (S.D.N.Y. Dec. 7, 2016) .............................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................10

*Maas v. Cornell Univ.*,
   245 A.D.2d 728 (3d Dep't 1997) .........................................................................22

*MacDonald v. Clinger*,
   84 A.D.2d 482 (4th Dep't 1982) ..........................................................................22

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ..................................................................................5

*McLean v. Triboro Coach Corp.*,
   302 N.Y. 49 (1950) ..............................................................................................17

*McMorris v. Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021) ....................................................................... *passim*

*Mme. Pirie's, Inc. v. Keto Ventures, LLC*,
   151 A.D.3d 1363 (3d Dep't 2017) .......................................................................22

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ..............................................................................................5

iv

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. Oct. 28, 2020)...................................................................22

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012).....................................................................19

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)....................................................................................................6

*Ojeda v. MTA*,
   No. 16-CV-3, 2016 WL 6208576 (S.D.N.Y. Oct. 24, 2016)...................................17

*Pauwels v. Deloitte LLP*,
   No. 19-CV-2313, 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020).........................22, 23

*Pena v. British Airways, PLC (UK)*,
   849 F. App'x 13 (2d Cir. 2021) ...............................................................................11

*Peters v. St. Joseph Servs. Corp.*,
   74 F. Supp. 3d 847 (S.D. Tex. 2015) .......................................................................10

*Rather v. CBS Corp.*,
   68 A.D.3d 49 (1st Dep't 2009) ................................................................................22

*Razuki v. Caliber Home Loans, Inc.*,
   No. 17-CV-1718, 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018)............................15

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011)....................................................................................8, 10

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) .....................................................................................9

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014).....................................................................................23

*Reznick v. Bluegreen Resorts Mgmt., Inc.*,
   154 A.D.3d 891 (2d Dep't 2017) .............................................................................19

*Savidge v. Pharm-Save, Inc.*,
   No. 17-CV-186, 2017 WL 5986972 (W.D. Ky. Dec. 1, 2017)................................15

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Shafran v. Harley-Davidson, Inc.*,
   No. 07-CV-1365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .......................................14, 16

*Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC*,
   349 F. Supp. 3d 1316 (S.D. Fla. 2018) .............................................................................14, 18

*Simon v. E. Ky. Welfare Rts Org.*,
   426 U.S. 26 (1976)...................................................................................................................5

*Solomon v. City of New York*,
   66 N.Y.2d 1026 (1985) ......................................................................................................13, 18

*Spokeo, Inc. v. Robins*,
   578 U.S. 330, 136 S. Ct. 1540 (2016)......................................................................................9

*Stapleton v. Tampa Bay Surgery Ctr., Inc.*,
   No. 17-CV-1540, 2017 WL 3732102 (M.D. Fla. Aug. 30, 2017) ..........................................10

*Stephens v. Availity, L.L.C.*,
   No. 19-CV-236, 2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) .............................................23

*Storm v. Paytime, Inc.*,
   90 F. Supp. 3d 359 (M.D. Pa. 2015) .......................................................................................10

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 (N.D. Ill. 2014) ........................................................................................10

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) ..................................................................................................10

*Terry v. Corp. for Nat'l & Cmty. Serv.*,
   No. 15-CV-9660, 2017 WL 9538861 (S.D.N.Y. Mar. 27, 2017)...........................................16

*Tighe v. Ginsberg*,
   146 A.D.2d 268 (4th Dep't 1989)............................................................................................22

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)..............................................................................................................9

*Travis v. Assured Imaging LLC*,
   No. 20-CV-390, 2021 WL 1862446 (D. Ariz. May 10, 2021) ..................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Tsao v. Captiva MVP Rest. Partners, LLC*,
    986 F.3d 1332 (11th Cir. 2021) ...................................................................10

*In re U.S. Off. of Personnel Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) ........................................................................9

*Wallace v. Health Quest Sys., Inc.*,
    No. 20-CV-545, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ...........................14, 15, 16, 21

*Whalen v. Michael Stores, Inc.*,
    153 F. Supp. 3d 577 (E.D.N.Y. 2015) ..............................................................11

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)...............................................................................5, 10

*Willey v. J.P. Morgan Chase, N.A.*,
    No. 09-CV-1397, 2009 WL 1938987 (S.D.N.Y. July 7, 2009).................................16

*Wilson v. Dantas*,
    No. 12-CV-3238, 2013 WL 92999 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d
    530 (2d Cir. 2014).................................................................................23

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ......................................................................9

*Zheng v. Live Auctioneers LLC*,
    No. 20-CV-9744, 2021 WL 2043562 (S.D.N.Y. May 21, 2021) ..........................11

**Statutes**

Federal Trade Commission Act,
    15 U.S.C. § 45(a)(1)...............................................................................18

**Other Authorities**

Class Action Complaint ¶ 24, *Steven v. Carlos Lopez & Assocs., LLC*, 995 F.3d
    295 (S.D.N.Y. 2018) (No. 18-CV-6500) (JMF) .................................................12

Federal Rules of Civil Procedure
    Rule 12(b)(1)........................................................................................5
    Rule 12(b)(6)...................................................................................6, 13, 16

vii

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

Lee S. Kreindler & David C. Cook, New York Law of Torts § 7:2 (14 West's
   N.Y. Prac. Series 2021)......................................................................................................17

U.S. Constitution Article III.........................................................................................................5, 8

## PRELIMINARY STATEMENT

Plaintiffs Nancy Bohnak and Janet Lea Smith have not been harmed in any way by the allegedly unauthorized access of their personal information. Instead of waiting to see if an actual injury occurs (as the law requires), they rushed to the courthouse and filed a putative class action complaint (the "Complaint") rife with conclusory statements and allegations of *hypothetical* future injuries. Entirely absent are the factual allegations necessary to state even a single claim for relief against Defendants Marsh & McLennan Companies, Inc. ("MMC") or Marsh & McLennan Agency LLC ("MMA") (together, "Marsh McLennan").

Plaintiffs' claims fail for three principal reasons. First, Plaintiffs lack standing to sue because they do not allege an actual or imminent injury. Second, Plaintiffs do not plausibly plead harm—a required element of each claim—and fail to state a claim for relief. Third, each of Plaintiffs' claims fails due to additional pleading failures, including the lack of any plausible allegation that Marsh McLennan breached a duty of care for the negligence claim, failure to allege the nature of the implied contract for the breach of implied contract claim, and failure to allege a confidential relationship for the breach of confidence claim.

Plaintiffs, both former MMA employees who reside in Florida, allege that their personally identifiable information ("PII") was accessed by an unauthorized actor who exploited a vulnerability in a *third party's*—not Marsh McLennan's—software. Notably, Plaintiffs do *not* allege an injury in fact: they do not allege any current injury, nor do they plausibly allege a threatened injury that is certainly impending. They do not claim identity theft, fraudulent charges, denied or lost credit, or *any* unauthorized use of their PII. Instead, Plaintiffs conjure up a series of hypothetical scenarios about things that theoretically could be done with their PII, but which have not happened and likely never will. This is especially true because Marsh McLennan offered Plaintiffs free credit and identity theft monitoring services, including up to $1 million of identity

theft insurance. In short, Plaintiffs' speculative allegations do not establish standing, and the Court should dismiss the Complaint on this ground alone.

Because Plaintiffs fail to allege an actual or certainly impending injury, they similarly fail to plausibly plead harm, a required element of each claim. Plaintiffs do not allege any out-of-pocket expenses or damages caused by actual or attempted fraud. Although Plaintiffs claim they have lost time, suffered annoyance, and that their PII has diminished in value, these allegations standing alone do not plausibly plead harm. Many judges in this and other districts have dismissed the same or similar claims in these circumstances. This Court should do the same.

Plaintiffs' claims fail for the additional reason that they do not plausibly allege that Marsh McLennan breached any specific obligation to safeguard their PII in a particular way, nor do they allege what reasonable precaution Marsh McLennan allegedly failed to take. This pleading failure is especially stark because Plaintiffs allege their PII was accessed without authorization due to a vulnerability in a *third party's* software. From the mere existence of a third party vulnerability, the Complaint posits a parade of threadbare legal conclusions (not factual allegations) that Marsh McLennan must have acted negligently or breached some implied agreement. Yet, Plaintiffs do not plausibly claim the vulnerability was known to Marsh McLennan (or anyone besides the unauthorized actor who exploited it against the third party). Nor do Plaintiffs allege that Marsh McLennan acted unreasonably in using the third party's software in the first place. Instead, Plaintiffs improperly seek to impose a standard of strict liability, which is not the relevant legal standard.

Finally, Plaintiffs' breach of confidence claim fails under Florida law because no Florida court has even recognized this claim as a separate tort. Plaintiffs' case is just as weak under New

York law, as they do not allege a sufficiently confidential, fiduciary relationship between themselves and Marsh McLennan.

## BACKGROUND[1]

MMC is a professional services firm headquartered in New York and incorporated in Delaware that provides services in the areas of risk, strategy, and people. (Compl. ¶¶ 3, 19, 26.) MMA is a wholly-owned subsidiary of MMC. (*Id*. ¶ 4.) Both named Plaintiffs reside in Florida (*id*. ¶¶ 17–18), and both were previously employed by companies that were later acquired by, or merged into, MMA (*see id.* ¶¶ 58, 67). Plaintiff Bohnak's employment with MMA ended in 2014; Plaintiff Smith's ended in 2016. (*Id.*) Plaintiffs do not allege they worked for MMA in New York or have any other connection to New York.

By letter dated June 30, 2021, Marsh McLennan notified Plaintiffs of an incident involving a third party's software:

> On April 26, 2021, we discovered that an unauthorized actor had leveraged a vulnerability in a third party's software since at least April 22, to gain access to a limited set of data in our environment. As soon as we became aware of the issue, we launched an investigation and took measures to restrict any further unauthorized activity or access to data; that access ended on April 30.

(Compl. ¶ 30 & Exs. 2–3.)[2] Marsh McLennan identified and resolved the issue within four days. Plaintiffs do not make any specific allegations about the third party software. They do not contend Marsh McLennan had any foreknowledge of the vulnerability, that it was known to the third party

---

[1] This motion relies on the Complaint's particularized allegations and documents incorporated by reference. *See Kamholtz v. Yates Cty.*, 350 F. App'x 589, 592 (2d Cir. 2009). Marsh McLennan does not concede the truth of these allegations.

[2] The Court can consider the notification letters on a motion to dismiss because Plaintiffs incorporated them by reference in the Complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

software provider, or that Marsh McLennan acted unreasonably in deciding to use the third party software in the first place.

The notification letter made clear that there was "no evidence to suggest that any of [Plaintiffs'] personal information has been misused," and that the personal information consisted of Plaintiffs' names and Social Security numbers. (Compl. Exs. 2–3.) Marsh McLennan offered Plaintiffs (and all other impacted individuals) a "complimentary two-year credit monitoring service[,]" which included "credit monitoring, identity theft detection and resolution services and up to $1 million of identity theft insurance." (*Id.*) The notification letter included simple directions about how to activate the credit monitoring service: either visit a website or call a toll-free number and give a code. (*Id.*) Plaintiffs do not claim they enrolled for this service.

Plaintiffs allege they suffered "lost time, annoyance, interference, and inconvenience," "anxiety and increased concerns for the loss of [their] privacy," and "diminution in the value of [their] PII" from the unauthorized access of their data. (*Id.* ¶¶ 63–64, 72–73.) Plaintiffs also claim their PII "*may* end up for sale on the dark web" or "fall into the hands of companies" that will use the PII for targeted marketing. (*Id.* ¶ 34) (emphasis added). They allege potential injury based on a "substantially increased risk of fraud, identity theft, and misuse resulting from [their] PII." (*Id.* ¶¶ 65, 74.)

Plaintiffs do not contend that anyone stole their identities, offered their PII for sale, committed or attempted to commit fraud using their PII, or that there has been any actual misuse of their information. Likewise, Plaintiffs do not allege that *their* specific PII was targeted, or even that Marsh McLennan was targeted.

Plaintiffs seek to represent a nationwide class of all individuals who received a notification letter from Marsh McLennan (the "Nationwide Class"), or alternatively, a limited subclass of

current and former employees who received the notification letter (the "Employees Class"). They assert three causes of action: negligence on behalf of the Nationwide Class, breach of implied contract on behalf of the Employees Class, and breach of confidence on behalf of the Nationwide Class.

## LEGAL STANDARDS

### I.    DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION

Under Rule 12(b)(1), a case must be dismissed for lack of subject-matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Article III of the U.S. Constitution limits the jurisdiction of federal courts to "actual cases and controversies," and an essential element of the case or controversy requirement is that plaintiffs "must establish that they have standing to sue." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013) (citations omitted). To establish Article III standing, a plaintiff must have suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* at 409 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Cautious to avoid stretching the concept of imminence beyond its purpose, the U.S. Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "Allegations of possible future injury" or even an "objectively reasonable likelihood" of future injury are not sufficient to confer standing. *Id.* at 409–10.

In the context of a putative class action, the "named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rts Org.*, 426 U.S. 26, 40 n.20 (1976) (citation and quotation marks

omitted) (emphasis added). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

## II.   DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Although the court accepts factual allegations as true at the pleading stage, this is "inapplicable to legal conclusions." *Id.* When stripped of "conclusory statement[s]," the complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must raise the "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,561 (2007) (citations omitted). When a plaintiff fails to plead all elements of a cause of action, the proper remedy is dismissal. *See, e.g.*, *Bildstein v. Mastercard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) ("Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action.") (citing *Corcoran v. N.Y. Power Auth.*, 935 F. Supp. 376, 382 (S.D.N.Y. 1996)).

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING

Plaintiffs lack standing because they fail to allege an injury that is concrete, particularized, and actual or "certainly impending." *Clapper*, 568 U.S. at 409. In the context of unauthorized access to data, the Second Circuit applies a three-part test to determine if a plaintiff has standing to sue: (1) "whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data"; (2) "whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud"; and (3) "whether the type

of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021). As to the third factor, the *McMorris* court noted that the sensitivity of the PII, standing alone, does not establish an injury in fact unless there are "other facts suggesting that the PII was intentionally taken by an unauthorized third party or otherwise misused[.]" *Id.* at 304.

In this case, each *McMorris* factor weighs in favor of dismissal. First, Plaintiffs do not allege that their PII was compromised as a result of a targeted attack to obtain *their* data. Second, Plaintiffs do not allege misuse of their PII or of any portion of the affected dataset. Third, Plaintiffs do not plausibly allege that the unauthorized access of their PII places them at a high risk of identity theft or fraud based on the sensitivity of the data alone, especially where they were offered free identity theft and credit protection services. The Court should therefore dismiss the Complaint for lack of standing.

## A.      The Unauthorized Access Did Not Result from a Targeted Attack

Nowhere in the Complaint do Plaintiffs allege "a targeted attack intended to obtain the *plaintiffs'* data." *Id.* at 301 (emphasis added). Quite the opposite: Plaintiffs claim that an "unauthorized actor [] leveraged a vulnerability in a *third party's* software . . . to gain access to a limited set of data[.]" (Compl. ¶ 5) (emphasis added). Parsing through Plaintiffs' allegations, the target of the attack (if any) was the third party software, not Plaintiffs, and not even Marsh McLennan. Plaintiffs do not claim that the actor who apparently engaged in a supply chain attack by exploiting a third party software vulnerability had any reason to know of Plaintiffs' existence, or any foreknowledge that Marsh McLennan used the software. At most, Plaintiffs allege an attack of opportunity to exploit a vulnerability in computer software used by any number of companies, and Marsh McLennan was one of them. This is the antithesis of a targeted attack designed to obtain Plaintiffs' data.

Where, as here, Plaintiffs fail to allege "that an unauthorized third party purposefully obtained the plaintiffs' data, courts have regularly held that the risk of future identity theft is too speculative to support Article III standing." *McMorris*, 995 F.3d at 301; *see also Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (plaintiffs lacked standing because they did not allege that their data on a stolen laptop was accessed or misused "nor . . . that the thief stole the laptop with the intent to steal their private information"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (plaintiffs lacked standing because the alleged increased risk that their information might be misused "is dependent on entirely speculative, future actions of an unknown third party").

Consistent with the Second Circuit's approach, district courts across the country have held that plaintiffs lack standing where there is no allegation that the attack was designed to target plaintiffs' specific data. In multiple cases involving ransomware attacks—where cyber attackers steal data to extort payment in exchange for not publicly releasing it—courts have dismissed for lack of standing. *See, e.g., Graham v. Universal Health Serv.*, No. 20-CV-5375, 2021 WL 1962865, at *4 (E.D. Pa. May 17, 2021) (dismissing complaint for lack of standing where plaintiffs alleged a ransomware attack that exposed their data because the court "is still left to speculate . . . whether Plaintiffs are also intended targets of the hackers' future criminal acts"); *Travis v. Assured Imaging LLC*, No. 20-CV-390, 2021 WL 1862446, at *6 (D. Ariz. May 10, 2021) (no standing where plaintiffs alleged their PII was "accessed" but not stolen in in a ransomware attack); *Clemens v. ExecuPharm, Inc.*, No. 20-CV-3383, 2021 WL 735728, at *4 (E.D. Pa. Feb. 25, 2021), *appeal docketed*, No. 21-1506 (3d Cir. Mar. 18, 2021) (employee lacked standing to sue for exposure of data following successful ransomware attack on her employer because "future harm remains speculative . . . it is still only ascertainable using the word 'if'—*if* anyone actually

downloaded her information . . . , *if* they attempt to use [it], and *if* they do so successfully, only then will she experience actual harm") (citation omitted).[3]

Because Plaintiffs fail to allege a targeted attack designed to obtain their specific data, they do not meet the first *McMorris* factor.

### B.    The Affected Dataset Has Not Been Misused

As for the second *McMorris* factor, Plaintiffs do not allege misuse of their PII or any portion of the affected dataset. To the contrary, Plaintiffs received a notification letter that clearly states: "we have found no evidence to suggest that any of your personal information has been misused." (Compl. ¶ 30, Exs. 2, 3.) Apparently recognizing that there has been no misuse of their PII as a result of this incident, Plaintiffs hypothesize that at some point in the future their data "*may* end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing." (Compl. ¶ 34) (emphasis added). This is exactly the sort of speculative future harm the Supreme Court has consistently found inadequate to confer standing. *See, e.g.*, *Clapper*, 568 U.S. at 411 (plaintiffs lacked standing where they "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) (finding "persuasive" the argument that, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm"); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1548 (2016) (injury must

---

[3] By contrast, the allegations in the Complaint differ markedly from data breach cases in which plaintiffs established standing based on a targeted attack. *See, e.g.*, *In re U.S. Off. of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 58 (D.C. Cir. 2019) (cyber attackers targeted the U.S. government and stole the personal information of government workers, and some victims had already suffered identity theft and fraud resulting from the breaches); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1029 n.13 (9th Cir. 2018) (hackers "specifically targeted [plaintiffs'] PII on Zappo's servers"); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 386 (6th Cir. 2016) (hackers "broke into Nationwide's computer network and stole the personal information of Plaintiffs and 1.1 million others"); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (plaintiffs alleged that hackers had "deliberately targeted Neiman Marcus in order to obtain their credit-card information").

be "'real,' and not 'abstract'") (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (injury must be "actual or imminent, not 'conjectural' or 'hypothetical'" (quoting *Whitmore*, 495 U.S. at 155)).

Applying this rule in unauthorized access cases, courts across the country (including the Second Circuit in *McMorris*) have dismissed complaints for lack of standing where, as here, plaintiffs did not allege any misuse of the affected dataset. *See McMorris*, 995 F.3d at 304 ("Plaintiffs do not allege any facts suggesting that their PII was misused following the accidental email here[.]"); *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021) (dismissing case for lack of standing, and noting that alleging a "certainly impending" injury would be "difficult" "without specific evidence of *some* misuse of class members' data"); *Beck*, 848 F.3d at 274 ("[E]ven after extensive discovery, the *Beck* plaintiffs have uncovered no evidence that the information contained on the stolen laptop has been accessed or misused or that they have suffered identity theft . . . ."); *In re SuperValu, Inc.*, 870 F.3d 763, 769–70 (8th Cir. 2017) (plaintiffs who alleged that their credit card information was stolen but not misused by hackers lacked standing); *Reilly*, 664 F.3d at 44 ("Appellants have alleged no misuse, and therefore, no injury.").[4]

---

[4] In addition to these circuit-level cases, district courts repeatedly have dismissed cases for lack of standing where there are no allegations of actual data misuse. *See, e.g., Stapleton v. Tampa Bay Surgery Ctr., Inc.*, No. 17-CV-1540, 2017 WL 3732102, at *3 (M.D. Fla. Aug. 30, 2017) (dismissing case for lack of standing because plaintiffs did not allege any misuse of the dataset); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 570 (D. Md. 2016) (plaintiffs "do not allege that their data has been misused in any way thus far"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 366 (M.D. Pa. 2015) (plaintiffs "do not allege that they have actually suffered any form of identity theft as a result of the data breach"); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) (plaintiff alleged no misuse of her data); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876–77, 880–81 (N.D. Ill. 2014) (no standing where plaintiff alleged only a disclosure of data); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-CV-6060, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010) (plaintiffs alleged nothing "to suggest that their alleged injuries are more than 'speculative' or 'hypothetical'"); *Hinton v. Heartland Payment Sys., Inc.*, No. 09-CV-594, 2009 WL 704139, at *1 (D.N.J. Mar. 16, 2009) (*sua sponte* dismissing case because plaintiff's allegations of increased identity theft and fraud risk "amount to nothing more than mere speculation").

By contrast, in post-*McMorris* cases where judges in this district have found standing, the plaintiffs clearly alleged actual misuse of the dataset. *See, e.g., Pena v. British Airways, PLC (UK)*, 849 F. App'x 13, 14 (2d Cir. 2021) (alleging that plaintiff's credit card information was used to purchase 20 unauthorized Uber rides and for other unauthorized purchases totaling $1,000); *In re GE/CBPS Data Breach Litig.*, No. 20-CV-2903, 2021 WL 3406374, at *6 (S.D.N.Y. Aug. 4, 2021) (named plaintiff alleged he had been targeted by scam and phishing attempts, and other members of putative class had suffered "identity theft, fraud and abuse"); *Zheng v. Live Auctioneers LLC*, No. 20-CV-9744, 2021 WL 2043562, at *2 (S.D.N.Y. May 21, 2021) (alleging that hackers had made "multiple unauthorized copies of the plaintiff's private personal information and offered it for sale online"). Plaintiffs make no such allegations of misuse here, nor is there any plausible reason to believe that they could do so.

Plaintiffs allege only their PII was "accessed" by an unauthorized third party. They do not allege misuse of their PII or anyone else's information.[5] And Plaintiffs concede there is "no evidence to suggest that any of [their] personal information has been misused." (Compl. Exs. 2–3.) In the absence of any allegation of misuse, Plaintiffs' unsupported fear of future injury is too speculative to support standing.

---

[5] While Plaintiffs allege various non-specific forms of "injury"—annoyance, interference, inconvenience, lost time, and a diminution in value of their PII (Compl. ¶¶ 63, 64, 72, 73)—these alleged harms are insufficient to confer standing. *See Clapper*, 568 U.S. at 416 ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending."); *McMorris*, 995 F.3d at 304 n.7 (time and money spent monitoring or changing financial information and accounts is not an injury in fact when there is no substantial risk of future identity theft). And diminution in value of PII is not actionable, absent more specific allegations not present here. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 754–55 (W.D.N.Y. 2017) (collecting cases); *Whalen v. Michael Stores, Inc.*, 153 F. Supp. 3d 577, 581–82 (E.D.N.Y. 2015) (holding that "without allegations about how her cancelled credit card information lost value," plaintiff did not have standing on this ground).

### C.     Exposure of Social Security Numbers Does Not by Itself Confer Standing

The third *McMorris* factor assesses whether the information exposed is of the type that would subject plaintiffs to a heightened risk of identity theft or fraud. *McMorris*, 995 F.3d at 303. Plaintiffs contend their Social Security numbers were accessed without authorization by an unknown third party (*see, e.g.*, Compl. ¶ 16), and the Second Circuit has acknowledged that the exposure of this sort of sensitive information *might* pose a risk of future identity theft. *McMorris*, 995 F.3d at 304. But the *McMorris* court plainly found that "in the absence of any other facts suggesting that the PII was intentionally taken by an unauthorized third party or otherwise misused," the disclosure of Social Security numbers does not by itself establish an injury in fact. *Id.* at 304. The same is true here, where Plaintiffs do not allege that their information (or anyone else's information) was intentionally targeted or misused.

Furthermore, any potential argument for standing based on the sensitivity of the data alone is weaker here than in *McMorris* because Marsh McLennan promptly offered Plaintiffs and other affected individuals free credit and identity theft monitoring services, including up to $1 million of identity theft insurance. (*See* Compl. Exs. 2–3.) The defendant in *McMorris* made no such offer (and the court still declined to find standing). *See* Class Action Complaint ¶ 24, *Steven v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (S.D.N.Y. 2018) (No. 18-CV-6500) (JMF), ("Defendant [ ] did not offer to provide employees or former employees with any safeguard of monitoring to prevent the data breach from resulting in identity theft of fraud.").

For these reasons, the unauthorized access of Social Security numbers, absent other allegations to support the existence of actual or imminent injury, is insufficient to confer standing.

***

In sum, Plaintiffs do not have standing to sue because they do not allege an injury in fact. Their conjectural allegations of potential harms that may occur in the future are not enough, and the Court should dismiss the case for lack of standing.

## II.   PLAINTIFFS FAIL TO STATE CLAIMS FOR RELIEF

The same defect—lack of an actual or imminent injury—that deprives Plaintiffs of standing also imperils their ability to state a claim under Rule 12(b)(6). That is because damages are a required element of each of Plaintiffs' claims under Florida or New York law.[6] Further, because breach of a duty is an element of each claim, and because mere "access" by an unauthorized third party does not by itself permit an inference that Marsh McLennan breached a duty, Plaintiffs fail to plausibly allege breach.

Plaintiffs' breach of confidence claim fails for the additional reason that neither Florida nor New York recognizes such a claim in the context of an employee-employer relationship, let alone a former employee-employer relationship.

### A.   Plaintiffs Fail to Plausibly Allege Negligence or Negligence *Per Se*

Plaintiffs' first cause of action is negligence, which, under both Florida and New York law, requires Plaintiffs to plead plausible facts to support the existence of a legal duty, breach of that duty, and damages proximately resulting from the breach. *See Solomon v. City of New York*, 66

---

[6] The Complaint lacks sufficient detail to permit a conclusive choice-of-law analysis on Plaintiffs' claims, though the allegations suggest that either Florida or New York law could apply based on the domiciles of the parties. A federal court applies the choice-of-law regime of the forum state, which is New York. *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (citations omitted). For both tort and contract claims, New York looks to the law of the state with the most significant interest in, and contacts with, the dispute. *See id.* (for torts, the court should consider the locale "with the most significant interest in the litigation."); *Matter of Allstate Ins. Co. (Stolarz—N.J. Mfrs. Ins. Co.)*, 81 N.Y.2d 219, 226–28 (1993) (for contracts, the court should locate the center of gravity of the contract through a multi-factor test). In both tort and contract analyses, the domicile of the parties is pertinent. *See Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (tort); *Allstate Ins. Co.*, 81 N.Y. 2d at 227 (contract). Here, Plaintiffs allege they are citizens and residents of Florida, and Marsh McLennan is headquartered in New York. (Compl. ¶¶ 17–20.) The notification letters Plaintiffs received were mailed to their residences in Florida. Any speculative future harm Plaintiffs theoretically may suffer would presumably be felt in Florida, not New York.

N.Y.2d 1026, 1027 (1985) (applying New York law); *Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1331–32 (S.D. Fla. 2018) (applying Florida law).

### 1.  Plaintiffs Fail to Allege Damages

Plaintiffs' negligence claim fails because they do not plausibly plead cognizable damages. *See Wallace v. Health Quest Sys., Inc.*, No. 20-CV-545, 2021 WL 1109727, at *9 (S.D.N.Y. Mar. 23, 2021) (dismissing negligence claims of two named plaintiffs who failed to allege any monetary losses cognizable in tort); *Shafran v. Harley-Davidson, Inc.*, No. 07-CV-1365, 2008 WL 763177, at *2–3 (S.D.N.Y. Mar. 20, 2008) (dismissing plaintiffs' negligence and other tort claims for failure to plausibly plead damages where they allegedly lost time and spent money on credit monitoring to guard against the future risk of identity theft); *In re Brinker Data Incident Litig.*, No. 18-CV-686, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020) (to plead a negligence claim in Florida, a plaintiff must allege "some actual harm").[7]

As discussed above, Plaintiffs do not claim identity theft, fraudulent charges, or any misuse of their information. Instead, they contend that, due to the alleged risk of *future* identity theft, they have suffered: (a) a diminution in value of their PII (Compl. ¶¶ 63, 72); (b) lost time, annoyance, interference, inconvenience, and anxiety about lost privacy (*id.* ¶¶ 64, 73); and (c) an increased risk of fraud, identity theft, and misuse of their PII (*id.* ¶¶ 65, 74). None of these are cognizable damages for negligence under New York or Florida law.

---

[7] Even if the Court were to conclude that Plaintiffs adequately alleged a sufficiently imminent injury to support standing, this does not automatically mean that Plaintiffs alleged the type of damages required for negligence, because the applicable legal standards are different. *Wallace*, 2021 WL 1109727 at *5 (citing *Doe v. Chao*, 540 U.S. 614, 624–25 (2004)); *see also Gardiner v. Walmart Inc.*, No. 20-CV-4618, 2021 WL 2520103, at *5 (N.D. Cal. Mar. 5, 2021) (dismissing negligence claim relating to data breach for failure to allege damages, even after concluding plaintiffs had alleged sufficient injury in fact for standing purposes); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *8 (the two standards "may overlap but are not synonymous"). In *Wallace*, the court dismissed the negligence claims of named plaintiffs who had failed to allege any monetary losses cognizable in tort, even after finding that such plaintiffs theoretically had standing. *Wallace*, 2021 WL 1109727 at *9; *see also Shafran*, 2008 WL 763177, at *2–3 (dismissing negligence claim resulting from data breach for failure to allege damages).

*First*, Plaintiffs' bald allegation that their PII has decreased in value does not qualify as damages. Diminution in value of PII is actionable "only if the plaintiff also alleges the existence of a market for that information and how the value of such information could have decreased due to its disclosure." *Wallace*, 2021 WL 1109727, at \*8 (citation omitted). In *Wallace*, plaintiffs alleged "the existence of a black-market for private information generally," but they did not allege that they could have sold their private information, or that it ever *was* sold on the black market. *Id.* at \*8. The same is true here. Plaintiffs do not allege they could have monetized their Social Security numbers, or that their information was actually sold by anyone on the black market. Nor do Plaintiffs allege that, but for the unauthorized access of their PII, they could have monetized it. *Id.*; *see also Razuki v. Caliber Home Loans, Inc.*, No. 17-CV-1718, 2018 WL 6018361, at \*1 (S.D. Cal. Nov. 15, 2018) (plaintiff failed to allege facts supporting assertion that PII had decreased in value); *Savidge v. Pharm-Save, Inc.*, No. 17-CV-186, 2017 WL 5986972, at \*4 (W.D. Ky. Dec. 1, 2017) (plaintiffs failed to allege how value of PII had been diminished or that plaintiffs would ever sell their PII). Accordingly, Plaintiffs' unsupported allegation that their PII somehow lost value does not equate to damages for purposes of their negligence claim.

*Second*, Plaintiffs' allegation that they have lost time and suffered annoyance due to the unauthorized access of their PII, without more, does not plausibly plead damages. *See Wallace*, 2021 WL 1109727, at \*7 (time spent monitoring credit, responding to potential instances of fraud, and freezing or unfreezing credit is not a cognizable injury); *see also Hammond*, 2010 WL 2643307, at \*10-11 (steps taken by plaintiff to monitor credit score "more vigilantly" due to "a heightened fear" of future identity theft do not amount to cognizable damages). Here, Plaintiffs claim they "spent time" "verifying the legitimacy" of Marsh McLennan's notification letter, "exploring credit monitoring and identity theft options, and self-monitoring [their] accounts."

(Compl. ¶¶ 60, 69.) These allegations do not suffice because "the time and expense of credit monitoring to combat an increased risk of identity theft is not, in itself, an injury the law is prepared to remedy." *Shafran*, 2008 WL 763177, at *3. Also, Marsh McLennan offered Plaintiffs identity theft protection services, including up to $1 million in identity theft protection insurance. (Compl. ¶ 30, Exs. 2–3.) So even assuming that the cost of purchasing such services might qualify as damages, Plaintiffs will never incur this cost.

*Third*, an alleged threat of future harm (here, identity theft) that is not reasonably certain to occur is not enough to impose tort liability. *Wallace*, 2021 WL 1109727, at *7. A speculative risk that "plaintiff's data *may* be misused," without allegations of actual misuse, is not a cognizable harm. *Willey v. J.P. Morgan Chase, N.A.*, No. 09-CV-1397, 2009 WL 1938987, at *9 (S.D.N.Y. July 7, 2009) (dismissing claims by credit card subscriber whose PII was disclosed). Plaintiffs do not allege they suffered any present harm, that they spent money on credit monitoring services, or that they otherwise incurred monetary or other damages as a result of the unauthorized access of their PII. They thus fail to show that they have suffered any damages. *Terry v. Corp. for Nat'l & Cmty. Serv.*, No. 15-CV-9660, 2017 WL 9538861, at *8 (S.D.N.Y. Mar. 27, 2017) (no damages where plaintiff did not show need to use free credit services or any injury as a result of security breach). For these reasons, Plaintiffs' negligence claim should be dismissed pursuant to Rule 12(b)(6).[8]

---

[8] Plaintiffs' conclusory allegation that *other* members of the putative class "have suffered and will suffer" various out-of-pocket expenses and costs (Compl. ¶ 124) does not save their claim. First, this formulaic recitation is not entitled to deference on a motion to dismiss. *Twombly*, 550 U.S. at 555. Second, there is no specific allegation that Plaintiffs incurred any out-of-pocket expense as a result of the unauthorized access to their information. *See Wallace*, 2021 WL 1109727, at *7, 9.

2.      **Plaintiffs Fail to Allege Breach or Causation**

Plaintiffs' negligence claim fails for the additional reason that there are no plausible allegations of breach. Stripped of its conclusory allegations, the Complaint alleges that because an unknown actor exploited a vulnerability in a third party's software, Marsh McLennan necessarily must have failed to take reasonable steps to protect Plaintiffs' data. This is not the standard for breach; it is the standard for strict liability, which does not apply to a garden variety negligence claim.

Negligence is defined as the "failure to employ *reasonable* care[,] the care which the law's reasonably prudent man should use under the circumstances of a particular case." *McLean v. Triboro Coach Corp.*, 302 N.Y. 49, 51 (1950) (emphasis added). For a breach to occur, there must be the "existence of a foreseeable risk and the defendant's unreasonable conduct in the face of that risk." Lee S. Kreindler & David C. Cook, New York Law of Torts § 7:2 (14 West's N.Y. Prac. Series 2021). To survive a motion to dismiss, Plaintiffs must allege a breach of this standard of care. *See Lopez v. United States*, No. 15-CV-9695, 2016 WL 7156773, at *10 (S.D.N.Y. Dec. 7, 2016).

Though Plaintiffs baldly assert that Marsh McLennan "did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining[,]" (Compl. ¶ 35), these are bare legal conclusions with no factual support and "do not suffice." *Lopez*, 2016 WL 7156773, at *11 (citing *Iqbal*, 556 U.S. at 678–79); *Ojeda v. MTA*, No. 16-CV-3, 2016 WL 6208576, at *2 (S.D.N.Y. Oct. 24, 2016) ("list[ing] a litany of ways in which defendant was allegedly negligent," without supporting facts, is insufficient to plead negligence). Here, Plaintiffs allege their PII was accessed without authorization due to a vulnerability in a third party's software. (Compl. ¶ 30) ("[A]n unauthorized actor [] leveraged a vulnerability in a third party's software . . . to gain access to a limited set of data in our

17

environment.") Plaintiffs do not claim Marsh McLennan had foreknowledge of the third party software vulnerability, that the vulnerability was known throughout the community such that a failure to patch it could be considered unreasonable, or that anyone apart from the unauthorized actor even knew about it. Nor do Plaintiffs allege that Marsh McLennan acted unreasonably in using the software in the first place. In the absence of specific factual allegations that Marsh McLennan's conduct was unreasonable, there can be no breach.

Relatedly, Plaintiffs fail to allege how any purported breach by Marsh McLennan proximately caused harm—another required element of a negligence claim. *See Solomon*, 66 N.Y.2d at 1028; *Silver Crown Invs., LLC*, 349 F. Supp. 3d at 1332 (applying Florida law). Plaintiffs "cannot allege causation because [the Complaint] does not even state what injury [Plaintiffs] suffered." *Koehler v. MTA*, 214 F. Supp. 3d 171, 177 (E.D.N.Y. 2016). Plaintiffs have therefore failed to provide facts sufficient "to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc.*, 493 F.3d at 98 (citing *Twombly*, 550 U.S. at 555).

### 3.   Plaintiffs' Negligence *Per Se* Claim Fails

Plaintiffs' cursory attempt to plead breach on a theory of negligence *per se* based on the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) ("FTC Act"), also fails. (Compl. ¶ 119.) For a statutory violation to support a claim for negligence *per se*, the statute must provide a private right of action. *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *10. There is no private right of action under the FTC Act, and courts routinely dismiss tort claims that attempt to invoke it. *See id.* (collecting cases); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *9 (FTC Act cannot support negligence *per se* under Florida law). And even assuming an alleged violation of the FTC Act could suffice, Plaintiffs' claim would still fail because they do not plead damages, as discussed above. *See Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, No. 99-CV-0275, 2004

18

WL 1811427, at *17 (S.D.N.Y. Aug. 12, 2004) (dismissing negligence claim based on negligence *per se* theory for failure to allege actual injury).

### B.    Plaintiffs Fail to Plead Breach of Implied Contract

For breach of implied contract, Plaintiffs must allege the existence of an implied contract, performance, breach, and damages. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012) (New York law); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *4 (Florida law). For this claim, Plaintiffs fail to plausibly allege the existence of an implied contract, breach, and injury.

To plead the existence of an implied contract, Plaintiff must allege that the parties' conduct and the surrounding facts and circumstances evince a mutual intent to contract and a meeting of the minds. *See I.G. Second Generation Partners, L.P. v. Duane Reade*, 17 A.D.3d 206, 208 (1st Dep't 2005) (citations omitted). "[C]onclusory allegations without pleading the pertinent terms of the purported agreement requires a court to speculate as to the parties involved and the conditions under which the alleged contract was formed[.]" *Reznick v. Bluegreen Resorts Mgmt., Inc.*, 154 A.D.3d 891, 893 (2d Dep't 2017) (citation omitted). Here, Plaintiffs do not plead any facts sufficient to permit an inference that any implied obligation existed at the time of the alleged incident, or what its terms might have been. Plaintiffs were initially employed many years ago by a non-party that was later acquired by MMA (*see* Compl. ¶¶ 58, 67), but they do not plead any facts about the nature of their contract with their original employer or MMA. There is thus no foundation upon which any implied obligation can be inferred—let alone one as specific as the unqualified obligation to safeguard Plaintiffs' PII against the threat of a hack by a third party, which Plaintiffs attempt to allege. (*See* Compl. ¶ 130); *Longenecker-Wells v. Benecard Servs., Inc.*, 658 F. App'x 659, 662–63 (3d Cir. 2016) (dismissing breach of implied contract claim under similar circumstances); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011)

(dismissing implied contract claim where plaintiff did not allege "sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract").[9]

Further, even if an implied contractual duty existed, Plaintiffs fail to allege that Marsh McLennan breached such duty, for the same reasons they fail to allege that Marsh McLennan breached the duty of reasonable care, as discussed above. *See* Point II.A, *supra*.

Finally, Plaintiffs fail to plausibly allege any cognizable damages caused by the breach of an implied contract. Plaintiffs' alleged damages for this claim are identical to those for the negligence claim: lost time, annoyance, diminution in value of their PII, and fear of future identity theft. (Compl. ¶¶ 63–65, 72–74.) None qualify as damages for breach of implied contract. *See Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 234 A.D.2d 187, 191–92 (1st Dep't 1996) (dismissing breach of contract claim for lack of damages and noting that "extreme embarrassment" is not compensable in contract); *Hammond*, 2010 WL 2643307, at *11 (plaintiffs' inability to demonstrate damages supported summary judgment for defendant on claim for breach of implied contract); *Casey v. Bank of Am., N.A.*, No. 13-CV-60983, 2014 WL 12580515, at *3 (S.D. Fla. Mar. 12, 2014) (dismissing claim for breach of implied contract because plaintiff alleged no tangible pecuniary loss following data breach, and "[p]laintiff's allegations of anxiety and/or mental and emotional distress are insufficient to support a breach of contract claim").

Because Plaintiffs fail to plausibly allege a contractual duty, breach, or damages, the Court should dismiss the breach of implied contract claim.

---

[9] Courts presented with similarly threadbare allegations have dismissed claims in the past. *See Germano v. Cornell Univ.*, No. 03-CV-9766 (DAB), 2005 WL 2030355, at *7 (S.D.N.Y. Aug. 17, 2005) (dismissing implied contract claim where plaintiff's unspecific allegations of defendant's conduct were "too vague to overcome a Rule 12(b)(6) motion"); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (affirming dismissal of implied contract claim where plaintiffs insufficiently alleged assent and terms); *see also Hammond*, 2010 WL 2643307, at *11 (a finding of no "assent" to be contractually bound supported Court's grant of summary judgment to defendant).

### C.     Plaintiffs Fail to Plead Breach of Confidence

Plaintiffs' breach of confidence claim also requires dismissal because they do not allege the required confidential relationship, and no Florida or New York court has recognized such a relationship in an action by an employee against a former employer.[10] Indeed, no Florida court appears to have ever recognized breach of confidence as a separate tort. And even assuming a confidential relationship could be said to exist between Plaintiffs and Marsh McLennan, the breach of confidence claim still fails because Plaintiffs fail to plausibly allege breach or damages.

Under New York law, breach of confidence requires: (i) a duty of confidentiality; (ii) a protectable interest in the information disclosed in confidence; (iii) a breach of that duty; and (iv) damages. *See HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 101–02 (S.D.N.Y. 2020); *Wallace*, 2021 WL 1109727, at *12 (citation omitted).

As explained above, Plaintiffs have not been the victims of attempted identity theft, have suffered no damages, and have not incurred any out-of-pocket costs. *See* Point II.A, *supra*. They therefore fail to plead cognizable damages, and the Court should dismiss the breach of confidence claim on this ground alone. *See Wallace*, 2021 WL 1109727, at *13 (dismissing breach of confidence claim for two plaintiffs who failed to allege injury).

The Court should dismiss the breach of confidence claim for the separate reason that Plaintiffs do not allege the required confidential, fiduciary relationship. The only relationship Plaintiffs allege is one between former employees and their former employer. Neither Florida nor New York recognizes breach of confidence in the context of an employee-employer relationship, much less a former employee-employer relationship. To the extent the law of Florida—where

---

[10] As with the other two causes of action, the Complaint does not allege enough facts to allow the Court to determine which state's law applies to the breach of confidence claim—Florida, New York, or some other state. *See supra* n.6. The only relevant factor in New York's interest-based analysis for torts which can be discerned from the Complaint is the domicile of the parties: Florida for Plaintiffs, and New York for Marsh McLennan. (Compl. ¶¶ 17–20.)

Plaintiffs reside—governs, there is no precedent under Florida law for this tort. *Cf. In re Brinker Data Incident Litig.*, 2020 WL 691848, at *21–22 (analyzing claim hypothetically under Florida law and citing cases from other jurisdictions to define the tort).

Under New York law, the plaintiff must allege a confidential relationship approaching a fiduciary relationship, or a contractual confidentiality commitment. *HC2, Inc.*, 510 F. Supp. 3d at 101, 101 n.5; *see also Pauwels v. Deloitte LLP*, No. 19-CV-2313, 2020 WL 818742, at *11 (S.D.N.Y. Feb. 19, 2020) (breach of confidence claim under New York law requires a duty "synonymous with fiduciary relationship"); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (hypothesizing that, to the extent cognizable under Florida law, breach of confidence requires "a confidential relationship"). The types of relationships courts have found to be confidential typically arise in the doctor-patient and professional counseling context. *See, e.g., Harley v. Druzba*, 169 A.D.2d 1001, 1002 (3d Dep't 1991) (social worker); *Tighe v. Ginsberg*, 146 A.D.2d 268, 271 (4th Dep't 1989) (physician); *MacDonald v. Clinger*, 84 A.D.2d 482, 486 (4th Dep't 1982) (psychiatrist); *Muransky*, 979 F.3d at 932 (no confidential relationship between retailer and purchaser).

Plaintiffs do not allege any contractual confidentiality commitment. The only relationship they allege is one between former employees and their former employer. Plaintiff Bohnak has not worked for MMA for seven years, and Plaintiff Smith has not worked with MMA for over five years. (Compl. ¶¶ 58, 67.) An employment relationship is not fiduciary in nature between employees and their *current* employer, let alone a former employer. *Rather v. CBS Corp.*, 68 A.D.3d 49, 55 (1st Dep't 2009); *see also Mme. Pirie's, Inc. v. Keto Ventures, LLC*, 151 A.D.3d 1363, 1365 (3d Dep't 2017) ("An employment relationship, on its own, will not create a fiduciary relationship.") (collecting cases holding same); *Maas v. Cornell Univ.*, 245 A.D.2d 728, 731 (3d

Dep't 1997). And an employer does not owe fiduciary duties to its *former* employees either. *Wilson v. Dantas*, No. 12-CV-3238, 2013 WL 92999, at *4 (S.D.N.Y. Jan. 7, 2013) (no fiduciary duties to former employees), *aff'd*, 746 F.3d 530 (2d Cir. 2014).

Because there is no confidential relationship between Plaintiffs and Marsh McLennan, no duty of confidence exists, and there can be no breach of a nonexistent duty. *See HC2*, 510 F. Supp. 3d at 101 (dismissing breach of confidence claim where plaintiff-employee failed to adequately allege a confidential relationship with defendant-employer); *see also Pauwels*, 2020 WL 818742, at *11 (dismissing breach of confidence claim by employee against employer); *Stephens v. Availity, L.L.C.*, No. 19-CV-236, 2019 WL 13041330, at *7 (M.D. Fla. Oct. 1, 2019) (dismissing data breach claim by healthcare patient against payment processor because there was no confidential relationship). Accordingly, this claim should be dismissed on the separate ground that Plaintiffs fail to plead the required duty of confidentiality or any breach of that duty.[11]

---

[11] Plaintiffs cannot save this claim by hypothesizing that some absent members of the class might have fiduciary relationships with Marsh McLennan, because Plaintiffs lack standing to pursue the claims of such differently situated persons. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014).

## CONCLUSION

Plaintiffs fail to plead any actual or certainly impending injury and lack standing to sue.

They also fail to plausibly allege negligence, breach of implied contract, and breach of confidence.

For these reasons, the Court should dismiss the case in its entirety, with prejudice.


Dated: October 8, 2021                    Respectfully submitted,

                                          **COOLEY LLP**

                                          By:   */s/ Travis LeBlanc*
                                                  Travis LeBlanc (*pro hac vice*)
                                                  Tiana Demas
                                                  Nicholas Flath
                                                  Valeria Pelet del Toro

                                          55 Hudson Yards
                                          New York, New York 10001
                                          Telephone: (212) 479-6000
                                          tdemas@cooley.com
                                          nflath@cooley.com
                                          vpeletdeltoro@cooley.com

                                          1299 Pennsylvania Avenue, NW, Suite 700
                                          Washington, DC 20004
                                          Telephone: (202) 728-7018
                                          tleblanc@cooley.com

                                          *Counsel for Defendants*